No. 592               July 1, 2026               33

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

ESTATE OF GRANT RAYMOND FISHER,
by and through its personal representative, Caitlin Fisher,
*Plaintiff-Appellant,*

*v.*

Trevor Nicholas LEE,
*Defendant-Respondent.*

Multnomah County Circuit Court
21CV31248; A181233

Marilyn E. Litzenberger, Judge.

Argued and submitted July 2, 2024.

Nadia H. Dahab argued the cause for appellant. Also on the briefs were Sugerman Dahab and John M. Coletti and Paulson Coletti Trial Attorneys PC.

Jonathan Henderson argued the cause and filed the brief *amicus curiae*. Also on the brief was Davis Rothwell Earle & Xóchihua, P.C., for Michael Sauls and Strike A Cord, LLC.

No appearance for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

POWERS, J.

Reversed and remanded.

**POWERS, J.**

In this wrongful death action, plaintiff, who is the wife and personal representative of decedent, Grant Fisher, appeals from a judgment that applied the noneconomic damages cap in ORS 31.710(1) to reduce plaintiff's noneconomic damages award of $20 million down to the statutory maximum of $500,000. In a single assignment of error, plaintiff argues that applying the cap to noneconomic damages in a wrongful death action violates the remedy clause of Article I, section 10, of the Oregon Constitution and the equal privileges and immunities clause of Article I, section 20, of the Oregon Constitution. For the reasons described below, we first conclude that the damages cap did not violate Article I, section 20, because the class created by ORS 31.710(1) was a nontrue class. We further conclude that our recent decision in *Estate of James Ritchie v. Helbig*, 347 Or App 37, 46, 586 P3d 428, *rev den*, 375 Or 332 (2026), controls the bulk of plaintiff's argument, and therefore, we reject plaintiff's categorical argument that the statutory cap cannot constitutionally apply in wrongful death actions. Finally, in applying the established analysis under Article I, section 10, we conclude that the application of ORS 31.710(1) to plaintiff's award violates the remedy clause in Article I, section 10, because plaintiff was left without a substantial remedy. Accordingly, we reverse and remand.

## BACKGROUND

The background facts are undisputed. On an early January morning, 23-year-old Fisher was driving west on Highway 26. Defendant, who was driving in the same direction, was going approximately 96 miles per hour and under the influence of narcotics. Defendant rear-ended Fisher's truck, knocking it off the road and causing it to roll at least once. Fisher's truck collided with a tree with such force that the steering wheel bent around his body. Fisher sustained immediate injuries, including lacerations to his heart, but he remained conscious for eight minutes. His truck went up in flames, and he spoke to bystanders as they tried to put out the fire. Fisher's heart stopped functioning and was no longer able to pass blood through his lungs, making it difficult for him to breathe. A pathologist explained that during

such a period of oxygen starvation, people try to fight for their life and that Fisher would have experienced helplessness and extreme panic before finally losing consciousness. Fisher was declared dead at the hospital. At the time of his death, Fisher had been married to plaintiff for about two-and-a-half years, and they had a four-month-old daughter.

Plaintiff filed this wrongful death case and, in her prayer for relief, sought noneconomic damages in the amount of $20 million and economic damages in the amount of $5 million. Defendant failed to appear, and plaintiff sought an order of default. At a *prima facie* hearing, plaintiff presented evidence, waived her claim for economic damages, and sought solely $20 million in noneconomic damages, which included $15 million for the loss of Fisher's society and companionship and $5 million for Fisher's conscious pain and suffering. With respect to the loss of society and companionship, the trial court noted that "$15 million is certainly not a number that we hear about every day, but in this case, I think it's justified for the loss of consortium[.]" With respect to pain and suffering, the court noted, "I've tried cases where someone was burned during a fire. But nothing compares to what I heard today. *** I am very comfortable awarding the $5 million for [Fisher's] pain and suffering as well."

After the hearing, plaintiff argued to the trial court that, although ORS 31.710(1) applies to civil actions for wrongful death, the statutory cap, at least as applied to plaintiff, is unconstitutional under the remedy clause in Article I, section 10, and the privileges and immunities clause of Article I, section 20. The trial court, however, applied the cap and entered judgment in the amount of $500,000. Plaintiff timely appeals.

On appeal, plaintiff asserts that the trial court erred by reducing the $20 million noneconomic damages award to $500,000 pursuant to ORS 31.710(1). The statute imposing the cap on noneconomic damages provides, in full:

"(1)   Except for claims subject to ORS 30.260 to 30.300 and ORS chapter 656, in any civil action for the wrongful death of any one person including claims for loss of care, comfort, companionship and society and loss of consortium,

the amount awarded for noneconomic damages, as defined in ORS 31.705, shall not exceed $500,000.

"(2)   This section does not apply to punitive damages.

"(3)   The jury shall not be advised of the limitation set forth in this section."

ORS 31.710. Plaintiff advances two arguments, contending that the application of ORS 31.710(1) violates Article I, section 10, and Article I, section 20. Defendant does not appear on appeal.[1]

We review whether the trial court's application of ORS 31.710(1) violates Article I, section 10, and Article I, section 20, as a matter of law. *See generally Busch v. McInnis Waste Systems, Inc.*, 366 Or 628, 468 P3d 419 (2020); *Greist v. Phillips*, 322 Or 281, 292, 906 P2d 789 (1995).

ARTICLE I, SECTION 20, AND TRUE CLASSES

We begin with plaintiff's second argument, which asserts that ORS 31.710 violates Article I, section 20. Plaintiff argues that the statute creates a class of Oregonian claimants who died as a result of their injuries and a class of those who did not—thereby treating injured Oregonians differently because it allows for full recovery for those who are injured and survive but denies full recovery to those who die. Plaintiff argues that there is no rational explanation for this differential treatment. For the reasons described below, we reject plaintiff's Article I, section 20, argument.

Article I, section 20, prohibits granting privileges or immunities to one citizen or class of citizens that are not equally available to all citizens.[2] As used in cases involving Article I, section 20, the term "class" takes on special

---

[1] In addition to appearing at oral argument, Michael Sauls and Strike A Cord, LLC filed an *amicus curiae* brief in support of defendant, arguing first that ORS 31.710(1) is not unconstitutional under the remedy clause in Article I, section 10, because the claim at issue here is a statutory wrongful death claim that does not implicate the remedy clause, and second that ORS 31.710(1) is not unconstitutional under the privileges and immunities clause in Article I, section 20, because the class created by the statute is a nontrue class, and therefore, Article I, section 20, imposes no restrictions on the statute.

[2] Article I, section 20, provides: "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

meaning, and laws that disparately treat only a "true class" violate that section of the constitution. *State ex rel Huddleston v. Sawyer*, 324 Or 597, 610, 932 P2d 1145, *cert den*, 522 US 994 (1997). A "true class" is one that has identity apart from the challenged law itself, such as classes based on race, sex, or alienage. *Tanner v. OHSU*, 157 Or App 502, 521-23, 971 P2d 435 (1998). In contrast, a nontrue class is a classification created by the statute itself. *Id.* A prominent example of a nontrue class, drawn from the Supreme Court's decision in *State v. Clark*, 291 Or 231, 240-41, 630 P2d 810 (1981), is the classification created by a statute that imposes a filing deadline for filing a petition for review. Such legislation creates two classes of persons: (1) those who timely file petitions for review, and (2) those who do not. Both are "classes" of persons; however, in the absence of the statute, those classes have no identity at all. *Id.*; *see also Tanner*, 157 Or App at 521 (so describing). Legislation that disparately affects such "classes" does not violate Article I, section 20, because that legislation cannot disparately affect a class that the legislation itself creates. *Tanner*, 157 Or App at 521; *see also MacPherson v. DAS*, 340 Or 117, 130, 130 P3d 310 (2006) (rejecting challenges to statutes "when the statutes themselves have created the alleged classes").

Here, plaintiff describes the class as depending on the severity of their injuries, allowing the full measure of compensatory damages to those who are seriously injured and survive but denying full measure of compensatory damages to those who are fatally injured. In our view, plaintiff has described a class that is dependent on the line-drawing that the statute itself creates and does not implicate a class outside of the statutory framework created by ORS 31.710(1). Said differently, the class described by plaintiff is such that plaintiffs are within the definition of the statute, or they are not. In short, this is indistinguishable from the example in *Clark*, where the terms of the legislation itself created the class and the class—in the absence of the statute—has no identity at all. Accordingly, because plaintiff's argument relies on a nontrue class created by ORS 31.710, we reject plaintiff's Article I, section 20 argument.

## ARTICLE I, SECTION 10: REMEDY CLAUSE

Next, we turn to plaintiff's contention that the trial court erred by applying the cap in ORS 31.710 to reduce the $20 million noneconomic damages award to $500,000 because, in her view, the cap violates the remedy clause of Article I, section 10.[3] Plaintiff argues that ORS 31.710(1) operates solely to reduce the remedy available to plaintiff, without any legislatively identified *quid pro quo* or other principle that may otherwise justify such a reduction. Plaintiff asserts that the common law duty of care provided for a claim for wrongful death and that ORS 31.710(1) continues to leave that duty intact, so it does not matter that the claim is a statutory claim for wrongful death. In so arguing, we understand plaintiff to be renewing her argument that she made before the trial court that, given the extent of the damages, the application of the cap was unconstitutional as applied to the award.

As we recently explained in *Ritchie*, the present version of ORS 31.710(1) is "more similar to the *quid pro quo* provided by the [Oregon Tort Claims Act] and found to be constitutionally sound in *Horton* [*v. OHSU*, 359 Or 168, 376 P3d 998 (2016),] than to the former limitation on personal injury damages at issue in *Busch*." *Ritchie*, 347 Or App at 46. In creating the wrongful death statute, the legislature provided a cause of action to plaintiffs that would not have had a claim at common law, and in so doing, the legislature chose to limit the amount of noneconomic damages recoverable from defendants in such cases, leaving economic damages without a cap. *Id.* As the Supreme Court explained, "the legislature is entitled to amend the amount of damages available in a statutory wrongful death action without running afoul of Article I, section 10, as long as the plaintiff is not left without a substantial remedy." *Greist*, 322 Or at 290; *see also Crandall v. State of Oregon*, 374 Or 699, 713, 584 P3d 1197 (2026) (explaining that whether a cap "survives a remedy-clause challenge is not determined solely, or even significantly, by comparing what the plaintiff would have

---

[3] Article I, section 10, provides: "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

received under the common law to the remedy that remains available to a plaintiff under the statute and making a judicial assessment of whether the two are so disparate that some adjectival label (substantial or insubstantial, paltry or emasculated) applies" (internal quotation marks omitted)). Accordingly, as we concluded in *Ritchie*, given that wrongful death actions are not cognizable under the common law, the statutory *quid pro quo* creating such a cause of action, and the history of limitations on damages recoverable in wrongful death cases, the statutory maximum of $500,000 set forth in ORS 31.710(1) does not facially violate Article I, section 10. *Ritchie*, 347 Or App at 46. That conclusion, however, does not end the analysis.

As a "final check" in the Article I, section 10, analysis, we must ensure that the amount awarded is itself constitutionally adequate on an as-applied basis, an argument that plaintiff also raises. As the Supreme Court explained, "[s]uch an assessment is appropriate as a final check to ensure that, even if the legislature's reasons for adopting a damages cap are constitutionally sufficient, the plaintiff has received a constitutionally sufficient remedy." *Busch*, 366 Or at 644. In assessing the legislative action, the court explained that, although the remedy need not restore all the damages that a plaintiff has sustained to be constitutional, "a remedy that is only a paltry fraction of the damages that the plaintiff sustained will unlikely be sufficient." *Horton*, 359 Or at 221. Here, we conclude that the remedy was a paltry fraction or so disparate as to deny plaintiff an adequate remedy, which is secured by Article I, section 10.

In the case before us, as noted above, the trial court awarded total damages of $20 million—$15 million for loss of consortium and $5 million for pain and suffering—and plaintiff had waived her claim for $5 million in economic damages. As an initial matter, we reject any implicit assertion in plaintiff's argument that a waiver of economic damages that were awarded by the trial court affects the remedy clause analysis. *See Busch*, 366 Or at 646 (explaining that the court was not persuaded that the difference between economic and noneconomic damages is significant for remedy-clause purposes). That is, although plaintiff is free to waive

the damages that were awarded, that decision does not alter whether application of the cap on noneconomic damages violates the state constitution.

Turning to whether plaintiff received a constitutionally sufficient remedy, we first note for context that, like other statutes that were challenged under Article I, section 10, the cap provided by ORS 31.710(1) does not eliminate or modify a defendant's duty to an injured plaintiff; rather, the cap modifies the remedy available to the plaintiff without making any modification to a defendant's duty. *See Busch*, 366 Or at 637, 639-40 (so explaining). Second, as we previously have described, the legislature enacted a hard monetary cap that has no mechanism for adjustment for the changing value of money or for an adjustment based on the relative severity of the injuries sustained by a plaintiff. *Vasquez v. Double Press Mfg., Inc.*, 288 Or App 503, 525, 406 P3d 225 (2017), *aff'd on other grounds*, 364 Or 609, 437 P3d 1107 (2019) (interpreting a prior version of ORS 31.710). The legislature's reason for so doing was to "put a lid on litigation costs, which in turn would help control rising insurance premium costs for Oregonians." *Id.* (internal quotation marks omitted); *see also Busch*, 366 Or at 648 (observing that the court had "no doubt that ORS 31.710(1) was intended to reduce insurance costs and improve insurance availability"). Third, the legislature set the cap at $500,000 in 1987 when it enacted the cap and has not adjusted that amount since that time. *See former* ORS 18.560 (1987), *renumbered as* ORS 31.710 (2003). Although those considerations do not directly answer whether the capped remedy is a paltry or insubstantial remedy under Article I, section 10, in a particular case, it is important background when engaging in the final step of the analysis.

It is also worth noting that any guidance from prior cases on how to evaluate whether a remedy is paltry or insubstantial in a particular case is minimal at best. *See Busch*, 366 Or at 659 (Balmer, J., dissenting) (noting that the Supreme Court's "decisions regarding the remedy clause are consistently inconsistent"). Perhaps part of the reason for the lack of guidance lies in the difficulty in measuring noneconomic damages, which has no identifiable standard.

*See, e.g.*, *DeMaris v. Whittier*, 280 Or 25, 29, 569 P2d 605 (1977) (observing that there "is no standard for the measurement of pain and suffering"); Dan B. Dobbs, 2 *Law of Remedies* § 8.1(4), 383 (2d ed 1993) (noting the difficulty of establishing a workable standard for measuring pain and suffering). We have also explained that the analysis does not reduce to arithmetic comparison drawn from prior cases. *Rains v. Stayton Builders Mart, Inc.*, 289 Or App 672, 690-91, 410 P3d 336 (2018) (explaining that we explicitly decline to engage in comparing and contrasting various percentages of recovery from other cases that determine whether a remedy was substantial); *see also Busch*, 366 Or at 644 (disavowing the reading of prior cases as solely based on the amount of the plaintiff's award and explaining that "no remedy-clause decision from *Hale* [*v. Port of Portland*, 308 Or 508, 783 P2d 506 (1989),] to *Horton* has rested solely on an algebraic comparison of the amount of damages awarded by the jury to the amount the plaintiff may recover in accordance with a damages cap"). We have, however, taken into account the percentage reduction in damages in the case, as well as the underlying factual circumstances of the injury, in determining whether a plaintiff has received a constitutionally adequate remedy. *See, e.g.*, *Vasquez*, 288 Or App at 525-26 (considering that the plaintiff had been grievously injured and the reduction of damages); *Rains*, 289 Or App at 691-92 (considering the factual circumstances, the plaintiff's injuries, and the percent reduction of noneconomic damages).

Here, the trial court awarded $20 million in noneconomic damages, which included $15 million for plaintiff's loss of Fisher's society and companionship and $5 million for Fisher's conscious pain and suffering. The trial court then capped that $20 million award at $500,000 under ORS 31.710. We conclude that, given the nature of plaintiff's injuries and the circumstances of this case, reducing plaintiff's noneconomic damages awards to $500,000 would leave plaintiff without a substantial remedy, which is secured by Article I, section 10.

As noted earlier, the trial court awarded $5 million in damages for Fisher's pain and suffering. That award was based on Fisher sustaining immediate and significant

injuries from defendant crashing into Fisher's truck with such force that, when Fisher hit the tree, the steering wheel of his truck bent around his body. With his truck in flames, Fisher spoke to bystanders as they tried to put the fire out and he eventually died gasping for air. The trial court awarded $15 million to plaintiff, Fisher's wife of two-and-a-half years, and mother of their shared four-month-old daughter, for loss of Fisher's society and companionship. Fisher was 23 years old.

In addition, although we decline to engage in comparing various percentages of recovery with other cases, we note that the application of the cap in this case results in a particularly low percentage of the noneconomic damage award that plaintiff was awarded. The legislature has not revisited the $500,000 hard cap on noneconomic damages since 1987. In the nearly 40 years since the legislature set that amount, the meaningfulness of $500,000 as a remedy for grievous injuries, such as the injury to Fisher and plaintiff in this case, has drastically diminished. Given the nature of Fisher's and plaintiff's injuries and the circumstances of this case, the legislature's reason for enacting the inflexible noneconomic damages cap—reducing insurance costs—cannot bear the weight of the dramatic reduction in noneconomic damages that the statute requires, leaving plaintiff with a constitutionally inadequate remedy.

Accordingly, under the circumstances of this case, we conclude that the application of ORS 31.710(1) to plaintiff's award violates the remedy clause in Article I, section 10.

Reversed and remanded.